MCGUIREWOODS LLP
Richard L. Jarashow (3217)
Hollis Gonerka Bart (8955)
1345 Avenue of the Americas
New York, New York 10105
(212) 548-2100
*Attorneys for Defendant*
*Alexander Brown*

---

VAN WAGNER ENTERPRISES, LLC

               Plaintiff,

      v.

ALEXANDER BROWN,

               Defendant.

Civil Action No.: 04CV3882

**ANSWER AND COUNTERCLAIM**

---

       Defendant Alexander Brown ("Brown" or "Defendant"), by and through its attorneys,

McGuireWoods LLP, as and for his Answer against plaintiff Van Wagner Enterprises, LLC

("VWE" or "Plaintiff"), respectfully alleges as follows:

       1.     Brown admits that Plaintiff has brought this action to enforce its alleged rights

under a Promissory Note dated August 5, 2002 and made by Brown in favor of Plaintiff (the

"Note"), but specifically avers that VWE, through Richard Schaps ("Schaps"), who, upon

information and belief, is the sole member and manager of VWE, agreed that any amounts due

under the Note are to be paid solely from the proceeds of the sale of Brown's ownership interest

in Van Wagner Communications, LLC ("VWC"), an affiliated company in which VWE has

owned the controlling interest at all relevant times.

       2.     Brown lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 2 of the Complaint and therefore denies same.

       3.     Brown admits that venue is appropriate in this Court pursuant 28 U.S.C.

§1391(a)(2) and (a)(3).

4.      Upon information and belief, Brown admits that Plaintiff is a New York limited liability company.  Brown lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 of the Complaint and therefore denies same.

5.      Brown admits he is an individual domiciled in England having an address at 74 Undercliff Gardens, Leigh on Sea, Essex, England,  SS9 1ED, but denies the balance of the allegations in paragraph 5 of the Complaint.

6.      Brown admits that he executed the Note on or about August 5, 2002 in favor of VWE but denies the balance of the allegations in paragraph 6 of the Complaint and respectfully refers the Court to the Note, a copy of which is attached to the Complaint as Exhibit A, for a full and complete recitation of the terms and conditions of the Note.

7.      Brown denies the allegations in paragraph 7 of the Complaint and respectfully refers the Court to the Note and to the Summary of Reorganization and Operating Agreement dated March 8, 2002, a copy in which is attached hereto as Exhibit 1 (the "Reorganization Memo") and Section 6.3 of the Amended and Restated Limited Liability Company Agreement of Van Wagner Twelve Holdings, LLC dated December 31, 2002 (the "Operating Agreement"), a copy of which is attached hereto as Exhibit 2, for a full and complete recitation of the terms and conditions under which payment is due under the Note and to be paid by Brown.

8.      Brown denies the allegations in paragraph 8 of the Complaint and respectfully refers the Court to the Note and to the Reorganization Memo and Section 6.3 of the Operating Agreement for a full and complete recitation of the terms and conditions under which payment is due under the Note and to be paid by Brown.

9.      Brown admits the allegations in paragraph 9 of the Complaint.

10.    Brown admits that he received a Notice of Demand as defined in paragraph 10 of the Complaint but denies the remaining allegations stated therein and respectfully refers the Court to the Notice of Demand for a full and complete recitation of the statements made therein.

11.    Brown admits he has not made any payments on the Note, avers that no payments are now due and payable and denies the remaining allegations in paragraph 11 of the Complaint.

12.    Brown responds to the allegations in paragraph 12 of the Complaint by realleging and incorporating herein by reference his responses to paragraphs 1 through 11 of the Complaint.

13.    Brown denies the allegations in paragraph 13 and respectfully refers the Court to the Note and to the Reorganization Memo and to Section 6.3 of the Operating Agreement for a full and complete recitation of the terms and conditions of the Note.

14.    Brown admits he has not made any payments on the Note and specifically avers that no payments are now due thereunder and denies the remaining allegations in paragraph 14 of the Complaint.

15.    Brown denies the allegations in paragraph 15 of the Complaint.

16.    Brown lacks information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies same.

17.    Brown denies the allegations in paragraph 17 of the Complaint and respectfully refers the Court to the Note for a full and complete recitation of the terms of the Note.

18.    Brown denies the allegations in paragraph 18 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

19.    As per the oral and written agreements made by VWE, through Schaps, the sole owner and manager of VWE, and through VWC, an affiliated company in which VWE has owned the controlling interest and Schaps has served as the Executive Manager at all relevant

times, Brown is entitled to an offset of any amounts due under the Note against the proceeds from the sale of his ownership interest in VWC.

### SECOND AFFIRMATIVE DEFENSE

20.    Plaintiff is estopped from demanding that the Note be satisfied through the payment of cash rather than as an offset against the proceeds of the sale of Brown's ownership interest in VWC by reason of the oral and written agreements Schaps made on behalf of VWE and as the Executive Manager of VWC that all amounts due under the Note would be offset against the proceeds of the sale of Brown's ownership interest in VWC, as expressly provided in the Reorganization Memo and in the Operating Agreement.

### THIRD AFFIRMATIVE DEFENSE

21.    VWE's action on the Note is premature because the Note is not due to be paid until VWC has repurchased Brown's ownership interest in VWC in accordance with the provisions of the Operating Agreement.

### FOURTH AFFIRMATIVE DEFENSE

22.    By commencing this action seeking the monetary satisfaction of the Note and by acting in concert with VWC and its wholly-owned subsidiary, Van Wagner Twelve Holdings, LLC ("VW Holdings"), and other affiliated companies in which VWE and/or Schaps own a controlling interest (collectively, the "VWE Group") to deprive Brown of his right to a non-cash satisfaction of the Note through an offset against the proceeds of the sale of his ownership interest in VWC, Plaintiff is barred by the doctrine of unclean hands and breach of its duty of good faith and fair dealing from recovering a monetary judgment against Brown for any amounts due under the Note.

4

## FIFTH AFFIRMATIVE DEFENSE

23.    The underlying action on the Note must be dismissed because Plaintiff has failed to join VWC and VW Holdings, both of which are necessary and indispensable parties because complete relief cannot be afforded to all parties to the Note action.

## SIXTH AFFIRMATIVE DEFENSE

24.    This Court lacks subject matter jurisdiction over the Note Action because VWC and VW Holdings, both of which are comprised of alien members, cannot be joined because, to do so, would destroy diversity jurisdiction.[1]

## COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 13, Defendant/Counterclaim Plaintiff Brown, by and through his attorneys, McGuireWoods LLP, as and for his Counterclaim against Plaintiff/Counterclaim Defendant VWE, respectfully alleges as follows:

## PARTIES

25.    Brown is an individual domiciled in England who resides at 74 Undercliff Gardens, Leigh on Sea, Essex, England,  SS9 1ED.

26.    Upon information and belief, Van Wagner Enterprises, LLC is a New York limited liability company having an address at 800 Third Avenue, New York, New York, 10022.

## JURISDICTION

27.    This Court has jurisdiction over the subject matter of this counterclaim pursuant to 28 U.S.C. § 1332(a)(2) since the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is among citizens of different states and of a foreign state.

28.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

---

[1] Brown respectfully reserves his right to assert the defense of lack of subject jurisdiction should it be revealed through discovery that any members of VWE are aliens.

**FACTUAL BACKGROUND**

**Brown's Employment with Van Wagner UK**

29.     On or about September 9, 1999, Brown was hired as the Director of a newly-formed affiliate of VWE, Van Wagner UK Limited ("VW UK"), based in London, England.

30.     Brown's employment relationship with VW UK was established under the laws of England pursuant to a Service Agreement dated September 9, 1999 between VW UK and Brown (the "Service Agreement"), a copy of which is attached here to as Exhibit 3.

31.     As a condition of his employment with VW UK, Brown was required to purchase an ownership interest in VW UK (the "UK Interest").

**Reorganization of the Van Wagner Affiliates**

32.     In or about March 2002, Schaps, as the sole member and manager of VWE, and as the manager of VWC, an entity in which VWE held a controlling interest, implemented a plan of reorganization whereby VW UK and other Van Wagner entities would be consolidated into VWC and then reorganized as subsidiaries of VWC, an entity in which VWE was to retain its controlling ownership interest post-reorganization.

33.     As Schaps explained it, the reorganization was being implemented as a way of minimizing the overall tax liability of the VWE Group.

34.     As a condition to the closing of the reorganization and his continued employment with VW UK, Brown was required (1) to contribute his UK Interest to VWC in exchange for a Class B membership interest in VWC ("Class B Interest") and (2) to purchase an additional 3.75% Class B Interest in VWC, which was valued by the VWE Group at $309,818.16.

35.     Under the terms of the reorganization, Brown was to acquire the additional 3.75% Class B Interest through a non-cash transaction in which he would be required to deliver a separate promissory note to VWC in the amount of $309,818.16.

**Schaps Assures Brown that the Note Will Be Paid Through an Offset**

36.    At or about the time Schaps began to implement the reorganization plan, Brown
told Schaps he wanted to sell a portion of his UK Interest as a way of raising the cash Brown
needed to purchase a home.

37.    After considering how best to accomplish Brown's objective, Schaps told Brown
that VWC would repurchase a portion of Brown's UK Interest in an amount equal to
approximately one-half of the amount Brown needed to raise and Schaps would arrange to have
his company, VWE, loan Brown the balance.

38.    Schaps told Brown he would have to sign a note in favor of VWE for the amount
of the loan from VWE.  However, Schaps assured Brown that any amounts due under the note to
VWE would be satisfied solely through an offset against the proceeds from the future sale of
Brown's Class B Interest in VWC.

39.    Schaps' representation regarding the payment of the Note through an offset was
consistent with the representation made in the Reorganization Memo, which had been provided
to Brown in or about March 2002 to explain the terms of the reorganization.  In particular, the
Reorganization Memo, in discussing the Company's obligation to repurchase Class B Interests,
confirmed that "[a]mounts owed by the Class B Member to VWC or its subsidiaries (including in
the case of the UK Employees, the purchase price payable for the interest being purchased in
connection with the Reorganization)...*will be offset against the purchase price.*"  Reorganization
Memo, EX 1 at p.10 (emphasis added).

40.    At a short, informal meeting regarding the reorganization that was held at VWE's
offices in New York, Schaps reaffirmed the representations he had made on behalf of VWE that
all amounts owed to any Van Wagner affiliate by Class B Members would be offset against the
proceeds from the sale of their Class B Interest in the newly-formed entity, VW Holdings.

7

41.    Thus, in reliance on the repeated oral and written representations of Schaps and the statements in the Reorganization Memo, and as condition to the reorganization and his continued employment with VW UK, Brown (1) agreed to contribute the balance of his VW UK Interest to VWC, (2) executed and delivered the Note to VWE, as payee, in the principal amount of £100,000, and (3) executed and delivered another promissory note, as required by the reorganization plan, to VWC, as payee, also dated August 5, 2002, in the principal amount of $309,818.16 ("VWC Note"), thereby increasing the value of his investment in VWC to approximately $650,000.

42.    Thereafter, the partial sale of Brown's UK Interest was effectuated and the proceeds from that sale together with the amount VWE was to advance under the Note were paid from a VWC account in a lump sum payment to Brown.

43.    That Note , which gives VWE the right to offset all amounts which the VWE Group owes to Brown against all amounts due under the Note, is the subject of the underlying action, which VWE commenced in order to obtain a <u>monetary</u> judgment against Brown for the full amount due under the Note.  VWC simultaneously commenced an action against Brown to recover a monetary judgment for the full amount due under the VWC Note but has since voluntarily withdrawn that action.

**<u>VWC Contributes Brown's Entire Ownership Interest in Phase Two of the Reorganization</u>**

44.    Having concluded the first phase of the reorganization, VWE proceeded to the second phase of the reorganization, whereby VWE and VWC and certain employees, including Brown, were to form and become members of VW Holdings, which would become a wholly-owned subsidiary of VWC.

45.    In or about December 2002, VWC contributed to VW Holdings, pursuant to the Operating Agreement, the ownership interests in VW UK, which Brown and others had contributed to VWC in furtherance of the first phase of the reorganization.

46.    Pursuant to the terms of the Operating Agreement, Schaps became the Executive Manager of VW Holdings with full power and authority to manage and conduct the business of VW Holdings. In that capacity, Schaps became the Chairman of the Board of VW Holdings.

47.    Schaps also became the Manager of VWC with "ultimate authority over *all* management decisions of VWC" and the right to participate in the day to day operating decisions of the reorganized VWC subsidiaries, including VW UK. *Quoting* EX 1 at p. 5 (emphasis added).

48.    Class B members, such as Brown, no longer had any voting rights.

**Schaps' Decision to Terminate Brown's Employment**

49.    In April 2004, Schaps wrote to Brown on behalf of the Board of VW UK "to terminate your employment with effect from the date of this letter, 19 April 2004" (the "Termination Letter"). A copy of the Termination Letter is attached hereto as Exhibit 4.

50.    The Termination Letter gave no indication that the decision to terminate Brown's employment was due to any gross misconduct on the part of Brown. To the contrary, Richard Schaps confirmed that:

> This termination is made in accordance with the Company's entitlement under clause 21.2 of your [Service Agreement], under which the Company may terminate your employment with immediate effect on payment of six month's pay in lieu of your contractual notice entitlement. I further confirm that, in accordance with clause 21.2 of the Agreement, the Company intends to make a payment in lieu of salary, which will consist of six months' net basic salary, excluding any bonus or other contractual emolument referable to your employment.

51.    Had Brown committed an act of gross misconduct of the type enumerated in Section 21.1.3 of the Service Agreement, VW UK would have instead been required to give

"summary notice" of dismissal in the manner provided in Section 21.1.3 and would not have any obligation to pay Brown six month's severance.

**Brown's Proper Exercise of His Class B Put Option**

52.    The Operating Agreement confers upon Brown, as a Class B Member of VW Holdings, the right to cause VW Holdings to purchase all of his Class B Interest, by exercising the put option granted to him under Section 6.3(a) of the Operating Agreement (the "Put Option") within ninety (90) business days after the occurrence of an event defined in Section 1.1(xix) of the Operating Agreement as a "Class B Put Event."

53.    Among the Class B Put Events which would trigger a right to exercise the Put Option was the termination of Brown's employment with Van Wagner affiliate "without cause".

54.    Thus, as of April 19, 2004, the date on which VW UK terminated Brown's employment for reasons other than gross misconduct, Brown had an immediate right to force VW Holdings, through the exercise his Put Option, to purchase all of his Class B Interest, which, as of that date, had a fair market value of at least $650,000, an amount well in excess of the amounts due under the Note and any other obligations of Brown to any VWE Group entities, including the VWC Note.

**Schaps' and VanWagner's Scheme to Deprive Brown of His Offset Right**

55.    In an apparent attempt to deprive Brown of the benefit of the right to exercise the Put Option and thereby deprive him of the right to offset the amounts due under the Note against the proceeds of the sale of his Class B Interest, VW UK, acting in concert with, and at the direction of, Schaps, the sole member of and manager of VWE and the Executive Manager and Chairman of the Board of VWC, attempted to retract the Termination Letter by sending another letter, a copy of which is attached hereto as Exhibit 5, in which counsel for the Van Wagner Group stated that his "clients have discovered facts", subsequent to the termination of Brown's

employment, "which entitle them to summarily dismiss him . . . and/or . . . treat themselves as discharged from the further performance of their obligations under [the Service Letter]."

56.    This "retraction" letter, however, provides *no* detail concerning any of these so-called "facts" which the VWE Group purportedly discovered subsequent to the termination of Brown's employment, thereby confirming the true intent of the letter; that is, to concoct a basis for depriving Brown of his right to exercise the Put Option and, in turn, satisfy his obligation under the Note from the proceeds of the sale of his Class B interest to VW Holdings.

57.    But, even if revealed and substantiated as acts of gross misconduct (a fact that is *not* conceded), such "facts" do not serve to eviscerate Brown's right to exercise his Put Option.

58.    "For cause" termination is not a concept recognized by English labor and employment laws and jurisprudence.  As such, under a "plain language" construction of the Put Option provision in the Operating Agreement, Brown's employment was not and could *never* be terminated by VW UK for "cause."

59.    Moreover, the subsequent discovery of facts, even if they rise to the level of gross misconduct (a fact which is *not* conceded), does not, under English law, afford an employer in the United Kingdom any basis to retract a letter agreeing to pay contractual severance in lieu of notice and convert the termination into a summary dismissal.

60.    In any event, "gross misconduct", the standard which must be met in the case of a summary dismissal under English law, is not included in the only definition for "cause" found in the Operating Agreement.  Instead, the definition of "Cause" is narrowly defined as:  "the final non-appealable (A) conviction of any Person for any felony perpetrated against the Company [defined as VW Holdings] or (B) judgment that a Person has committed a fraud against the Company that materially harmed the Company."

61.     Neither of those events had occurred as of the date on which Schaps terminated Brown's employment with VW UK and agreed in writing to pay him six month's contractual severance in lieu of contractual notice, as provided in the Service Agreement.

62.     To the contrary, Brown had, at all times during his employment, conducted himself in a manner consonant with his obligations under his Service Agreement and the custom and practice of his employer.  Brown acted as the director of VW UK and was in charge of new business development.  In this capacity, Brown was highly successful and took VW UK from a start up company in 1999 to revenues in excess of $20 million.  Schaps commented on Brown's success on numerous occasions and expressed his gratitude to Brown for the contributions he had made to the overall growth of the VWE Group.

63.     As such, by notice dated May 19, 2004, Brown timely and properly gave notice to VW Holdings of his intention to exercise the Put Option pursuant to Sections 6.3 and 9.4 of the Operating Agreement.  A copy of the May 19 notice is attached hereto as Exhibit 6.

64.     Notwithstanding Brown's clear right to exercise the Put Option and force VW Holdings to purchase all of his Class B interests in the manner provided in the Operating Agreement, by letter dated May 20, 2003, VW Holdings wrongfully advised Brown that it would not honor its obligation under the Operating Agreement to repurchase all of Brown's shares: "In light of the fact that your employment with VW UK has been terminated for cause, no Class B Put Event has occurred.  Accordingly, you are not entitled to exercise the Class B Put Option and your notice is of no effect."  A copy of the May 20 letter is attached hereto as Exhibit 7.

65.     As a result of the concerted and coordinated actions of Schaps, VWE and its subsidiary companies, Brown has been wrongfully deprived of the benefit of the written and oral promises that the Note Brown signed in connection with the reorganization would be satisfied

12

solely from the proceeds of the sale of his shares upon a termination of his employment – regardless of the reason for such termination.

## FIRST CAUSE OF ACTION – BREACH OF OFFSET RIGHT

66.     Brown repeats and realleges the allegations contained in paragraphs 1 through 65 above as if fully set forth herein.

67.     Schaps, in his capacity as the sole member and manager of VWE, and VWC, an entity controlled by VWE, agreed that, upon a termination of Brown's employment, Brown would not be required to make any payment under the Note until a sale of Brown's Class B Interest has been completed, and that all amounts due under the Note would be offset by proceeds of such sale.

68.     Schaps reaffirmed these agreements just moments before Brown, in reliance on these repeated promises, executed and delivered the Note to VWE as part of the documentation he was required to sign in connection with the first phase of the reorganization.

69.     By prematurely declaring all amounts due and payable under the Note and by commencing the underlying action seeking a monetary judgment against Brown for all amounts due under the Note before there has been a sale of Brown's Class B Interest, VWE has breached its agreement that the Note would not have to be paid until a sale of Brown's Class B Interest and that all amounts due under the Note would be satisfied solely by offsetting the proceeds of such sale against the amounts due under the Note.

70.     As a result of VWE's breach of its agreement, Brown has been wrongfully deprived of the benefit of VWE's agreement that the Note would be repaid through an offset of a portion of the proceeds from the sale of his Class B interest. As a result of the actions of VWE, Brown has been damaged in an amount in excess of $75,000, with the exact amount to be determined at the trial in this case.

## SECOND CAUSE OF ACTION – SPECIFIC PERFORMANCE OF OFFSET RIGHT

71.    Brown repeats and realleges the allegations contained in paragraphs 1 through 70 above as if fully set forth herein.

72.    Brown is entitled to specific performance of the written and oral agreements VWE, through its sole member and manager, Schaps, and through VWC, an entity controlled by VWE, made in connection with the reorganization of the VWE Group, that the Note would only be payable when Brown's Class B interest was sold and that all amounts due under the Note would be satisfied through an offset against a portion of the proceeds of such sale.

## THIRD CAUSE OF ACTION – PROMISSORY ESTOPPEL

73.    Brown repeats and realleges the allegations contained in paragraphs 1 through 72 above as if fully set forth herein.

74.    As an inducement to secure Brown's agreement to execute and deliver the Note, maintain his existing UK Interest, acquire on a non-cash basis an additional interest in VWC and to contribute all of his ownership interests to VWC as part of the plan VWE had implemented in order to achieve the tax planning goals of the reorganization of the VWE Group, VWE, through its sole member and manager, Schaps, clearly and unambiguously promised that the Note would only be payable when Brown's Class B Interest was sold and that all amounts due under the Note would be satisfied through an offset against a portion of the proceeds of such sale.

75.    VWE, through its sole member and manager, Schaps, and through VWC, the entity by which VWE effectuated its tax-savings plan, repeated these promises, both orally and in writing.   Further, all other aspects of the plan of reorganization were carried out as represented to Brown in the VWC Summary and in the statements Schaps made at the meeting in which he outlined the plan for reorganizing the entities under VWE's control.   As such, it was

14

reasonable for Brown to rely on the numerous assurances regarding the offset that they would be honored by VWE.

76.    Brown relied to his detriment on the promises made by VWE by not selling his UK Interest for cash and instead executing and delivering a Note to VWE and then contributing his remaining UK Interest to VWC.

77.    As a result of Brown's reliance on the promises made by VWE, Brown has been injured because he has been deprived of the right to satisfy his obligation under the Note from the proceeds of the sale of his Class B stock.

78.    VWE, having accepted Brown's performance of the conditions VWE imposed on his continued employment and the preservation of his existing ownership interest, is equitably estopped from obtaining a monetary judgment against Brown for the amounts due under the Note.  Accordingly, Brown is entitled to a judgment that the amounts due under the Note are to be satisfied through an offset against the proceeds of the sale of his Class B Interest.

## FOURTH CAUSE OF ACTION – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

79.    Brown repeats and realleges the allegations contained in paragraphs 1 through 78 above as if fully set forth herein.

80.    By reason of the representations made to Brown, VWE agreed that, upon a termination of employment, regardless of whether that employment was with or without "cause", no payment would be due under the Note until a sale of Brown's Class B Interest had been completed and that all amounts due under the Note would be offset by proceeds of such sale.

81.    VWE, through Schaps, reaffirmed these agreements just moments before Brown, in reliance on these repeated promises, executed and delivered the Note to VWE.

82.     Notwithstanding Brown's clear right to exercise the Put Option and force VW Holdings to purchase all of his Class B interest in the manner provided in the Operating Agreement, by letter dated May 20, 2003, VW Holdings, acting in concert with VWE and Schaps, wrongfully and in bad faith advised Brown that it would not honor its obligation under the Operating Agreement to repurchase all of Brown's shares:  "In light of the fact that your employment with VW UK has been terminated for cause, no Class B Put Event has occurred. Accordingly, you are not entitled to exercise the Class B Put Option and your notice is of no effect."

83.     In an apparent attempt to deprive Brown of the benefit of the right to offset all amounts due under the Note with a sale of his Class B Interest, VWE, acting in concert with other entities in the VWE Group – all of which are controlled by Schaps and/or VWE – and in breach of the covenants of good faith and fair dealing, has (1) prematurely declared all amounts due and payable under the Note by commencing the underlying action seeking a monetary judgment against Brown and (2) refused to give effect to Brown's notice of his intention to cause a repurchase of Class B Interest and that all amounts due under the Note would be satisfied solely by offsetting the proceeds of such sale against the amounts due under the Note.

84.     As a result of VWE's concerted and coordinated bad faith and unfair dealing, Brown has been wrongfully deprived of the right to sell his Class B Interest to VW Holdings and to realize the value thereof and apply a portion of the proceeds from such sale against the balance due under the Note.  As a result of the breach by VWE, Brown has suffered damages in an amount in excess of at least $75,000 with the exact amount to be determined at the trial in this case.

## PRAYER FOR RELIEF

WHEREFORE, Alexander Brown demands judgment in his favor against Van Wagner Enterprises, LLC, as follows:

a.     An award of damages in an amount to be determined at trial resulting from VWE's breach of its agreement that the Note would be repaid on a non-cash basis through an offset of a portion of the proceeds from the sale of his Class B Interest;

b.     Specific performance of the agreement VWE made that the Note would only be payable when Brown's Class B Interest was sold and that all amounts due under the Note would be satisfied through an offset against a portion of the proceeds of such sale;

c.     A judgment that VWE is equitably estopped from obtaining a monetary judgment against Brown for any amounts due under the Note;

d.     An award of attorneys' fees, costs and other expenses incurred in defending against Plaintiff's unjustifiable attempt to collect sums due under the Note; and

e.     Such other and further relief as the Court deems just and proper.

MCGUIREWOODS LLP

Richard L. Jarashow (3217)
Hollis Gonerka Bart (8955)
1345 Avenue of the Americas
New York, New York  10105
(212) 548-2100

17

## CERTIFICATE OF SERVICE

### CERTIFICATE OF SERVICE

I, Hollis Gonerka Bart, hereby certify that on August 2, 2004 I caused to be served a true copy of the following document:  Answer and Counterclaim, together with all exhibits thereto via overnight courier with a copy via facsimile to:

John C. Olman, Partner
Brown Raysman Millstein Felder & Steiner, LLP
900 Third Avenue
New York, New York  10022
(212) 895-2900

Hollis Gonerka Bart

\\COR\386743.2