MCGUIREWOODS LLP
Hollis Gonerka Bart (HB8955)
1345 Avenue of the Americas
New York, New York 10105
(212) 548-2100
*Attorneys for Defendant*
*Alexander Brown*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VAN WAGNER ENTERPRISES, LLC

    Plaintiff,

v.

ALEXANDER M. BROWN,

    Defendant.

Civil Action No.: 04CV3882 (VM)

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rules 33.1 and 33.3, Defendant Alexander M. Brown ("Brown"), states as follows for his Responses to Plaintiff Van Wagner Enterprises, LLC's ("VWE") First Set of Interrogatories:

## GENERAL OBJECTIONS

A.    Brown objects to each Interrogatory to the extent it seeks to impose obligations greater than those imposed by the Federal Rules of Civil Procedure and the Local Rules of this Court.

B.    Brown objects to any Interrogatory that seeks information that is (1) protected by the work product doctrine; (2) protected by the attorney-client privilege or any other applicable privilege; (3) irrelevant to the subject matter involved in the pending action; (4) overly broad, unduly burdensome and/or and oppressive; or (5) vague and/or ambiguous.

C.    Brown reserves the right to object to the admission into evidence of any and all documents, things or information made available in response to these interrogatories on any

permissible grounds, including without limitation the ground that the information is irrelevant and immaterial to any claim or defense asserted in this action.

D.  Brown objects to these interrogatories to the extent they seek "all" information and/or documents relating to any specific subject, on the grounds that such interrogatories are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of material, relevant or admissible evidence. Brown will interpret those interrogatories reasonably in responding.

E.  Brown objects to these Interrogatories to the extent they improperly seek discovery of information which is in the nature of prejudgment discovery and/or is relevant solely to the action Van Wagner UK, Limited ("VW UK"), a wholly-owned subsidiary company of Plaintiff, has commenced against Brown in the United Kingdom (the "UK Action").

F.  As the investigation of and discovery in these matters continue, Brown reserves the right, within the scope of the applicable rules, to revise, modify or amend, at any time, his objections or responses, and to introduce at trial any evidence from any source or any witness.

## INTERROGATORIES

1.  Describe in detail the context in which Richard Schaps "agreed that any amounts due under the Note are to be paid solely from the proceeds of the sale of Brown's ownership interest in Van Wagner Communications, LLC..." as alleged in paragraph 1 of the Answer and Counterclaim. If this alleged "agreement" by Schaps occurred in an oral conversation or meeting, describe in detail the time, date, place, purpose of, and witnesses to the meeting. If this alleged "agreement" is evidenced in written document(s), describe the document(s) and state where such document(s) is/are currently located.

**ANSWER:**

On or about March 11 or 12, 2002, a meeting took place in the New York City offices of Van Wagner Communications, LLC ("VWC"). During this meeting, the Summary of Reorganization and Operating Agreement dated March 8, 2002 (the "Reorganization Memo")

2

was distributed to all attendees. The purpose of this meeting was to discuss the Reorganization Memo. As part of this discussion, Schaps confirmed that any amounts owed by any Class B member to any of the Van Wagner companies (the "VW Entities") by would be satisfied solely through a non-cash offset against the proceeds from the future sale of their Class B Interest. Schaps affirmatively stated that the promissory note I would be required to sign in exchange for a 3.75% Class B Interest in VWC (the "VWC Note") would be satisfied solely through a non-cash offset against the proceeds from the future sale of my Class B Interest.

Thereafter, in June or July of 2002, I decided to sell approximately £225,000 of my ownership interest in VW UK. I informed Schaps of my intention to sell my interest during an informal meeting between Schaps and me, which took place at the Lanesborough Hotel in London. No one else was present during this discussion. I do not remember the exact date of the meeting.

Schaps responded by explaining that it was important to him that I retain the equity interest in Van Wagner because (a) management's continued ownership in the business would be viewed positively by external investors as it would demonstrate that management had confidence in the future prospects for growth of the VW Entities; and (b) it would allow me to take advantage of the projected future growth of the business. Thus, Schaps proposed that instead of simply selling the shares, he would arrange to have VWC repurchase a portion of my Class B Interest in an amount equal to £125,000 of the interest and that he would arrange to have VWE loan me the remainder, i.e., £100,000. Schaps devised this approach to ensure that I retained an equity interest in the company.

Schaps told me that I would have to sign a note in favor of VWE for the amount of the loan (the "VWE Note"). However, consistent with the statements in the Reorganization Memo

3

and with his statements at the March 2002 meeting in New York, Schaps assured me that any amounts due under this note would be satisfied solely through an offset against the proceeds from the future sale of my Class B Interest.

Mark Johnston, the Chief Financial Officer of VW UK and Managing Director of VW Twelve ("Johnston") was aware of this arrangement, including my right to the offset against the VWE Note because he was the drafter of the VWE Note and the VWC Note. Further, I recall a telephone conversation with Johnston, which took place some during the period June to August 2002, in which we discussed that a note would be executed for the £100,000 loan just like the additional share purchase and would be treated the same way in terms of the offset.

2. Describe in detail each and every "oral agreement" You claim any Van Wagner Company made with You with regard 39 – 41 of the Answer and Counterclaim, including the content of the alleged agreement; the person or persons who were parties to the alleged agreement; the date, time, place and purpose of the conversation or meeting in which the alleged oral agreement was made; the identity of any and all witnesses to, and the identity of any and all persons having knowledge of, each such alleged oral agreement.

**ANSWER:**

See response to Interrogatory Nos. 1, 4 and 5.

3. Describe in detail each and every document which evidences, refers or relates to each and every "written agreement" You claim any Van Wagner Company made with You with regard to Your claim that You are entitled to an "offset," as you allege in paragraphs 19 – 20 and 39 – 41 of the Answer and Counterclaim, including the content of the alleged agreement; the identity of all persons who have knowledge of each document; and the current location of each document.

**ANSWER:**

The VWE Note, the VWC Note, the Reorganization Memo and the Amended and Restated Limited Liability Company Operating Agreement of Van Wagner Twelve Holdings, LLC, dated December 31, 2002 (the "Operating Agreement"). Additional documents relevant to my offset right, including the documentation I was required to execute in connection with the

4

reorganization and the true value of my Class B Interest, are within the possession, custody and control of the VWE and the other VW Entities.

    4.    Identify each and every person present at, and each and every person with knowledge of, the "short, informal meeting" to which You refer in paragraph 40 of the Answer and Counterclaim.

**ANSWER:**

To the best of my recollection, this meeting was attended by each and every member of Van Wagner Twelve Holdings, LLC ("VW Twelve"), including Schaps. Johnston also was present.

    5.    Describe in detail the content and purpose of the "short, information meeting" to which You refer in paragraph 40 of the Answer and Counterclaim, including a detailed description of the alleged statements made by Schaps which You allege "reaffirmed the representations" previously made by Schaps.

**ANSWER:**

To the best of my recollection, the purpose of the meeting was to discuss the contents of the Reorganization Memo, which was distributed to members of VW Twelve for the first time at the meeting. The meeting participants also discussed the business of the company generally. At this meeting, Schaps affirmed that amounts owed to any VW Entity by Class B Members would be offset against the proceeds from the sale of their Class B Interest.

    6.    Identify the date, time, and location of the "short, informal meeting" to which You refer in paragraph 40 of the Answer and Counterclaim.

**ANSWER:**

The meeting took place at the New York City office of VWC on or about March 11 or 12, 2002.

7. Describe in detail all damages You claim to have suffered as alleged in the Answer and Counterclaim, including the type of injury, the cause of such injury, and the mitigating measures you took to avoid such injury.

**ANSWER:**

The damages suffered are alleged in the Answer and Counterclaim. VWE has wrongfully deprived me of my right to have the VWE Note repaid through a non-cash offset of a portion of the proceeds from the sale of my Class B Interest. VWE's refusal to permit the offset, if left unredressed, would require me to pay the full amounts due under the VWE Note without the corresponding offset to which I am entitled. Moreover, as a result of VWE's breach and wrongful refusal to advance my attorneys' fees, costs and expenses as required by the Operating Agreement, I have incurred, and continued to incur, substantial damages in defending this lawsuit.

In an effort to mitigate against these losses, I promptly delivered to VW Twelve the notice required under Section 6.3 of the Operating Agreement, advising of my intention to exercise my Put Right and to require VW Twelve to repurchase my shares in the manner provided in the Operating Agreement. VW UK attempted to retract its termination letter dated April 19, 2004 and to recast my termination of employment as one for gross misconduct, so that it could be argued that a triggering event had not occurred which would permit me to exercise my Put Right under the Operating Agreement. From the very first call my labor counsel in the UK had with UK counsel for VW UK, I have made known my willingness to reconvey my Class B Interest to VW Twelve in full satisfaction of the amounts due under the VWE Note. Despite those efforts, VWE prematurely commenced this action and has since refused subsequent efforts to settle this matter, thereby breaching its obligation to mitigate its damages under the VWE Note.

8.  Identify in detail the "contributions" and "success" You claim to have made to Van Wagner UK, as alleged in paragraph 62 of the Answer and Counterclaim.

**ANSWER:**

I was principally involved in the initial development of VW UK in the United Kingdon ("UK"). At the time, Van Wagner was not well-known in the UK. I used my extensive business contacts and ten years of experience in the business to identify new sites and opportunities to develop advertising locations. All business development and negotiations on behalf of VW UK were carried out solely by me. I grew the company to become the recognized leader of high-end advertising displays in London, with sales in excess of $20 million per year – roughly 5% of all outdoor advertising in London. I achieved this from organic development, not from corporate acquisition.

9.  Describe in detail Your understanding of Your job responsibilities from September 9, 1999 through April 19, 2004.

**ANSWER:**

Brown objects to the Interrogatory because it seeks information that is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence.

10.  Identify each and every person present each and every time Schaps "commented on [Your] success" and/or "expressed his gratitude" to You, as alleged in paragraph 62 of the Answer and Counterclaim.

**ANSWER:**

I do not recall the specific dates on which Schaps commented on my success or expressed his appreciation for my work, nor do I recall who was present when such comments were made.

11.  Describe in detail each financial contribution or financial investment You made to any Van Wagner Company.

**ANSWER:**

Brown objects to this Interrogatory on the grounds that the terms "financial investment" and "financial contribution" are vague. Without waiver of any objection and based on my understanding of the intent of this question, I respond, as follows: the terms and conditions under which I made a contribution to VWC and VW Twelve are set forth in the Reorganization Memo, the Operating Agreement and the documentation I was required to execute in order to effectuate the contribution of my ownership interest in VW UK in furtherance of the reorganization.

12. Describe Your understanding of the reason for the termination of Your employment by Van Wagner UK.

**ANSWER:**

Brown objects to the Interrogatory because it seeks information that is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence.

13. Describe in detail "facts" the Van Wagner Companies discovered subsequent to Your termination, which You reference in paragraphs 55 – 57 of the Answer and Counterclaim.

**ANSWER:**

Brown objects to this Interrogatory because the subsequent correspondence referred to in the Complaint did not specify the nature of the subsequently discovered "facts" and as such, would require Brown to speculate about which "facts" the VW Entities claim to have discovered. Brown further objects to the Interrogatory because it seeks information that is uniquely in the possession of the VW Entities, is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence. Without waiver of any objection, Brown responds as follows: I do not know what specific facts the VW Entities claim to have discovered after they attempted to recast VW UK's termination of my

8

employment as one for gross misconduct. I specifically deny that I engaged in any gross misconduct, as VW UK has alleged in the UK Action.

14. State Your basis for believing You had a right to exercise the Put Option in May 2004.

**ANSWER:**

Pursuant to the terms of the Operating Agreement, which speak for themselves, the letter of termination dated April 19, 2004 constituted an event which entitled me to exercise the Put Option, pursuant to Section 6.3(a) of the Operating Agreement.

15. Describe in detail Your business and personal relationship with Guy Goodyear.

**ANSWER:**

Brown objects to the Interrogatory because it seeks information that is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence.

16. Describe in detail Your relationship to Cartona Limited, including the extent to which You personally, directly or indirectly, received any financial or other benefit from or by reason of You relationship with Cartona Limited.

**ANSWER:**

Brown objects to the Interrogatory because it seeks information that is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence.

17. Describe in detail Your relationship to Greendawn Services Ltd., including the extent to which You personally, directly or indirectly, received any financial or other benefit from or by reason of Your relationship with Greendawn Services Ltd.

**ANSWER:**

Brown objects to the Interrogatory because it seeks information that is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence.

18. Describe in detail Your relationship to Dreamland Services Ltd., including the extent to which You personally, directly or indirectly, received any financial or other benefit from or by reason of Your relationship with Dreamland Services Ltd.

**ANSWER:**

Brown objects to the Interrogatory because it seeks information that is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence.

19. Describe in detail Your relationship to Brentford Fuel Company Ltd. including the extent to which You personally, directly or indirectly, received any financial or other benefit from or by reason of Your relationship with Brentford Fuel Company Ltd.

**ANSWER:**

Brown objects to the Interrogatory because it seeks information that is irrelevant to the claims and defenses in this action and because it seeks information that is not likely to lead to the discovery of admissible evidence.

20. Identify all real, personal and intangible property owned or controlled in whole or in part by You, whether directly or indirectly, and/or individually or jointly with any other Person.

**ANSWER:**

Brown objects to the Interrogatory because it is overly broad, unduly burdensome and because it seeks information that is improper post-judgment discovery, irrelevant to the claims and defenses in this action and is not likely to lead to the discovery of admissible evidence.

21. Identify each and every person You intend to call as a witness at trial.

**ANSWER:**

Brown objects to this Interrogatory on the grounds that it is premature. Subject to this Objection and the General Objections, Brown states that he intends to call the witnesses identified in the Civil Cases Management Plan and Scheduling Order filed with the Court on September 16, 2004.

Dated: New York, New York  
       November 29, 2004

MCGUIREWOODS LLP

*Hollis Gonerka Bart*  
Hollis Gonerka Bart (HB8955)  
1345 Avenues of the Americas  
New York, New York 10105  
(212) 548-2100  
Attorneys for Defendant  
Alexander M. Brown

The factual portions of the responses above are accurate to the best of my knowledge and belief.

*Alexander M. Brown*

Subscribed and sworn to before me on this 2nd day of ~~November~~ December, 2004.

(Seal)
Notary Public

My Commission Expires:
On death.

PETER MALCOLM RATTAN
CUMBERLAND HOUSE
24-25 BAXTER AVENUE
SOUTHEND ON SEA
ESSEX G.B
NOTARY PUBLIC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon John C. Ohman, Brown Raysman Millstein Felder & Steiner LLP, 900 Third Avenue, New York, New York 10022-4728 via confirmed facsimile on this 29th day of November, 2004.

_____
Hollis Gonerka Bart